Elizabeth Barker v. Commissioner.
Barker v. Commissioner
Docket No. 93966.
United States Tax Court
T.C. Memo 1963-130; 1963 Tax Ct. Memo LEXIS 214; 22 T.C.M. (CCH) 634; T.C.M. (RIA) 63130; May 14, 1963
*214 1. Transfer of a house built for petitioner by an elderly friend on a lot adjoining her own home was a gift and the value thereof is not includable in petitioner's taxable income. 2. Petitioner's gain on sale of other property determined. 3. Petitioner failed to file an income tax return for the year 1957. Assessment of deficiency not barred by statute of limitations. 4. Petitioner's failure to file an income tax return for 1957 was due to reasonable cause and not willful neglect. Addition to tax under section 6651(a), I.R.C. 1954, is not applicable. 5. A part of the underpayment of tax owed by petitioner was due to negligence. Addition to tax under section 6653(a), I.R.C. 1954, applied. 6. Petitioner failed to file a declaration of estimated tax for 1957. Addition to tax under section 6654, I.R.C. 1954, applied. Norman H. Lipoff and Michel G. Emmanuel for the petitioner. Jones E. Davis for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax for the year 1957 as follows: Additions to tax,
I.R.C. 1954
Income
Sec.
Sec.
Sec.
Tax
6651(a)
6653(a)
6654
$8,420.60
$2,105.15
$421.03
$231.81
The issues for decision are: (1) Whether the transfer of a house and *216 lot in Tampa, Florida, to petitioner by Blanche Norton was a gift or whether the value thereof was compensation for services rendered; and, if the latter, the correct value thereof. (2) Whether petitioner filed a Federal income tax return for the year 1957. (3) Whether wages received by petitioner in the amount of $1,560 were reported in a joint income tax return for petitioner and her estranged husband purportedly filed by petitioner's husband. (4) Whether the capital gain realized by petitioner on the sale of certain real estate in Tampa, Florida, was reported on the purported joint income tax return aforesaid, and the amount of such gain. (5) Whether petitioner is liable for the addition to tax under section 6651(a) of the Code [1] for failure to file an income tax return for 1957. (6) Whether petitioner is liable for the addition to tax under section 6653(a) for negligent underpayment of income tax. (7) Whether petitioner is liable for the addition to tax under section 6654 for failure to file a declaration of estimated tax. Findings of Fact The stipulated facts are so found. Petitioner *217 is and was during the year 1957 a resident of Tampa, Florida. She was married to James Everett Barker throughout the year 1957 but they were living apart, Barker being in the service and stationed in Mississippi. Petitioner was previously married to Harvey M. Snead, from whom she obtained a divorce in 1946. In 1938 petitioner was living across the street from and near the home of Blanche Norton (hereinafter called Norton), an older woman who was living with her husband but had no children. Petitioner became acquainted with Norton and a close friendship, like a mother-daughter relationship, developed between the two. Petitioner did many things for Norton and Norton in turn did things for petitioner. Norton's husband died in 1955, at which time Norton was over 70 years of age and suffering from arthritis, which made it difficult for her to move about and prevented her from driving an automobile. Thereafter petitioner devoted more of her time to Norton, driving her about a good bit, shopping for her, and assisting Norton in doing things for herself and about her house which Norton could not do alone because of her physical condition. However, petitioner had a young son, David, living *218 at home with her, who was sickly and required a good bit of attention. Norton, on numerous occasions, made small gifts of money or clothing to petitioner and her children. She gave petitioner, as trustee for her younger son David, the sum of $1,500 at Christmas of 1956, which petitioner placed in a savings account for David. When petitioner's second husband left home in the latter part of 1956 and took petitioner's car, Norton bought a car for petitioner, which petitioner often used in driving Norton various places she wanted to go. Norton also made generous gifts to other individuals and to charities. In the latter part of 1956 petitioner began collecting rents for Norton from tenants of properties owned by Norton. Petitioner received no compensation for doing this at the start, but in 1957 Norton started paying petitioner $30 per week for this service, which required about 3 hours per week of petitioner's time. This continued throughout the year 1957, during which time petitioner was paid a total of $1,560. In May 1957, Norton purchased one lot and one-half of the adjoining lot on Paddock Street in Tampa, for $4,500. Petitioner and Norton thereafter entered into a contract *219 with a contractor to build a house for Norton on the full lot and a house for petitioner on the one-half lot. Petitioner's house was completed in August at a cost of approximately $16,500, all of which was paid by Norton, and Norton's house was completed in September. By deed dated July 20, 1957, recorded in November 1957, Norton conveyed the one-half lot with the improvements thereon to petitioner, for a stated consideration $10of and other valuable considerations. Attached to the deed were Florida revenue stamps totalling 20 cents, that being the minimum amount required to record a deed, and no Federal revenue stamps. Petitioner paid Norton nothing for the property. Norton, who was about 75 years of age at the time, married a man named Harris in June 1958. Harris, who was much younger than Norton, had moved next door to Norton sometime in 1957. Thereafter, and until Norton and her husband were separated in December 1958, petitioner saw much less of Norton than she had in the past. Norton filed a chancery suit to set aside the deed to the above property against petitioner on February 14, 1958. The complaint alleged that when Norton purchased the property she entered into a verbal *220 agreement with petitioner that if petitioner would continue to care for Norton during the rest of her life Norton would will the property to petitioner at her death, that Norton did not remember signing a deed to the property to petitioner, that she never intended deeding the property to petitioner, that petitioner had paid no consideration therefor, and prayed that the deed be canceled and declared null and void. This suit was dismissed at the cost of Norton on February 20, 1958, pursuant to a stipulation signed by both parties requesting that this be done. Norton died prior to the trial of this case. Respondent determined that the value of the property transferred from Norton to petitioner which he determined to be $20,000 at the time of the transfer, was compensation for services rendered by petitioner to Norton taxable to petitioner as ordinary income. Petitioner claims the transfer was a gift, nontaxable for income tax purposes. The transfer of the lot and improvements thereon by Norton to petitioner in 1957 was a gift and the value thereof is not includable in petitioner's taxable income. On April 10, 1957, petitioner and her husband, Barker, conveyed lots 5, 6, 7, and *221 8 of Almima subdivision to Gussie Larson for $2,250, incurring expenses of sale in the amount of $214.89. A three-room frame house was located on lots 7 and 8, which had been built in 1938 or 1939 for approximately $700. Petitioner and her former husband, Snead, had owned lots 1-8 of Almima subdivision and had sold them in 1945 for $2,400 under an agreement for deed. Petitioner respossessed these lots in 1946. Petitioner and Snead were divorced in 1946 and the divorce decree declared petitioner and Snead to be the owners of the lots as tenants in common. The value of the property at the time of repossession was $2,400, of which about $700 was attributable to the house. The house was rented for approximately 2 years between 1947 and 1950. Petitioner purchased Snead's one-half interest in the lots at a sheriff's sale in 1955 for $1,500, which she paid by offsetting that amount against a judgment she held against Snead for child support. Petitioner's basis in the house and lots 5-8 at the time petitioner sold them in 1957 was $1,700. Petitioner realized a gain of $335.11 on the sale of the house and lots in 1957. In the notice of deficiency respondent determined that petitioner realized *222 a gain of $1,925 on this transaction but admits on brief that the gain was about $685.11. Early in 1958 petitioner's husband forwarded to her a joint income tax return for the year 1957 for himself and petitioner, with the request that petitioner sign it and forward it to the Internal Revenue Service if it was all right. Petitioner found that the $1,560 in wages she had received from Norton during 1957 was not reported thereon, so she attached a note to this effect to the return and sent it back to her husband to correct and file. No income tax return for the year 1957 was filed either by petitioner or by her husband as a joint return for petitioner and himself. Petitioner's husband obtained a divorce from her prior to June 1958 without petitioner's knowledge. Petitioner's failure to file a return for 1957 was due to reasonable cause and not due to willful neglect. A part of petitioner's underpayment of income tax for the year 1957 was due to negligence. Petitioner did not file a declaration of estimated income tax for the year 1957. Opinion The principal issue is whether the transfer of the house and lot to petitioner was a gift from Norton or whether it was transferred *223 as compensation for services rendered and taxable to petitioner as ordinary income. In Commissioner v. Duberstein, 363 U.S. 278 (1960), the Supreme Court said that "A gift in the statutory sense * * * proceeds for a 'detached and disinterested generosity' * * * 'out of affection, respect, admiration, charity or like impulses' * * *" and that "the most critical consideration * * * is the transferor's 'intention.'" The Court refused to lay down a definitive "test" of what constitutes a gift under the statute, but rather recognized that such cases "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." Essentially, the issue is one of fact. Our analysis of the evidence presented and our observation of petitioner and the other witnesses on the witness stand leads inescapably to the conclusion that this transfer was intended to be and was in fact a gift. Unfortunately, Norton was deceased at the time of the trial and no direct evidence was offered to prove her intent. However, it seems clear from her relationship with petitioner, from her prior acts of generosity *224 to petitioner and her children, from her actions in acquiring and transferring the property for no consideration, and even from her actions subsequent to the transfer, that Norton intended the transfer as a gift proceeding from a "detached and disinterested generosity" out of affection and like impulses. There is no evidence of any employer-employee relationship between Norton and petitioner other than with respect to the collection of rents, for which petitioner was amply paid. True, petitioner spent a good bit of time with Norton and did many kindly acts for her, but there is no indication that petitioner either sought or expected compensation therefor. Norton was a generous woman and because of the relationship between the two, and the fact that Norton had no children of her own, it is logical to assume that Norton considered petitioner a natural object of her bounty. There is nothing to indicate that Norton felt any moral obligation toward petitioner - in fact, the evidence indicates that the acts of generosity in the past had been reciprocal. There is no evidence that Norton did not understand and realize what she was doing when she built the house for petitioner, and the uncontradicted *225 testimony of the real estate agents is that Norton came into their office alone to arrange for and sign the deed, and by her actions led them to believe the transfer was to be a gift to petitioner. Any inference that might be drawn from the complaint in the suit filed by Norton against petitioner to set aside the deed is nullified by the fact that the suit was voluntarily dismissed by Norton a few days after it was instituted and Norton apparently made no further efforts to have it set aside. Furthermore, even some of the allegations in the complaint are inconsistent with respondent's argument that the transfer was intended as compensation for services rendered. Our finding of fact that the transfer was a gift is dispositive of this issue in favor of petitioner. The other issues relate primarily to the question of whether petitioner filed a return for the year 1957 on which was reported certain admitted income and gains, and, if not, whether such omission was due to reasonable cause and not due to willful neglect, negligence, or intentional disregard of the rules and regulations. There is no evidence that a return was actually filed for petitioner - what evidence there is indicates *226 no return was filed. Petitioner's evidence shows only that she signed a joint return, attaching a note thereto with respect to the compensation she received from Norton, and returned it to her husband to file. The husband was not present at the trial to testify. This is not proof that the return was filed, and petitioner cannot escape liability for tax on her income and capital gain simply because she intended that it be included in a return that would be filed. We uphold respondent's determination that petitioner is liable for the tax, if any, on her admitted income of $1,560 and her capital gain of $335.11. We have found as a fact that petitioner's basis in the house and lots she sold in 1957 was $1,700 and that her gain was $335.11. The only dispute between the parties is on the question of basis. The parties agree that petitioner's basis should be reconstructed from the value of the property at the time it was repossessed in 1946 and the steps taken by each to so reconstruct it are quite similar; however, they disagree as to the value that should be attributed to the house. There is little evidence of any value on this point and inasmuch as respondent admits his determination *227 in the deficiency notice was wrong no presumption of correctness attaches thereto. We have therefore done our best to allocate petitioner's total basis of $2,700 in all eight lots between the house and four lots that were sold and the remaining four lots. In allocating $700 to the house and $1,000 to the four lots sold we have taken into consideration what little evidence was presented and the fact that some depreciation on the house would have been chargeable during the period it was rented. We have found that petitioner's failure to file a return was due to reasonable cause and not due to willful neglect. Therefore, the addition to tax under section 6651(a) is not applicable. When petitioner's husband sent her a joint return which he had prepared and signed, we think she had good reason to believe that he would file the return after she signed it and sent it back to him. Perhaps she was somewhat negligent in not seeing to it herself that this was done but we cannot find that this was willful neglect. We have found as a fact that a part of the underpayment of tax owned by petitioner was due to negligence, and hence the addition to tax under section 6653(a) is applicable. There *228 is no evidence that the joint return prepared by petitioner's husband and forwarded to her reported the sale of the Almima subdivision lots and there is no evidence that she instructed her husband to add the gain thereon to the income reported. This alone would justify our finding of negligence on the part of petitioner in underpaying her tax and furthermore we do not find sufficient evidence to overcome the presumptive correctness of respondent's determination in this respect. Inasmuch as we have found that petitioner failed to file a return for the year 1957, petitioner's plea that assessment of the deficiency is barred by the statute of limitations, sec. 6501(a), raised for the first time by amended answer filed when the case was called for trial, must be denied. Sec. 6501(c)(3). Petitioner presented no evidence with regard to her failure to file a declaration of estimated tax for the year 1957 and, consequently, respondent's determination of the addition to tax under section 6654 must stand. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954.↩